UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GARY L. O'NEAL and GARY J. O'NEAL, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 3:18-cv-5269-BRM-LHG |
| MIDDLETOWN TOWNSHIP, MIDDLETOWN TOWNSHIP POLICE DEPARTMENT, DETECTIVE RICHARD FULHAM, POLICE CHIEF CRAIG WEBER, JOHN DOES #1-3, and JOHN DOES #4-10, | : | OPINION |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Middletown Township, Middletown Township Police Department, Detective Richard Fulham ("Detective Fulham"), and Police Chief Craig Weber's ("Police Chief Weber," collectively "Defendants") Partial Motion to Dismiss.[1] (ECF No. 8.) Plaintiffs Gary L. O'Neal ("O'Neal Senior") and Gary J. O'Neal ("O'Neal Junior," collectively, "Plaintiffs") oppose the Motion. (ECF No. 12.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Partial Motion to Dismiss is **GRANTED**.

---

[1] In their Partial Motion to Dismiss, Defendants argue certain claims against the John Does named in this matter should be dismissed. However, Defendants do not represent such John Does and therefore cannot argue in their favor. To the extent Defendants' opposition seeks to dismiss claims against the John Does, such request is **DENIED**. The Court will only address Defendants' arguments as to the named Defendants.

**I.     BACKGROUND**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

This matter arises out of Defendants' execution of a search warrant of O'Neal Senior's residence that uncovered Controlled Dangerous Substances ("CDS"). O'Neal Senior lives at his residence in Middletown Township with his son, Adam, who has his own private bedroom at his father's house. (Compl. (ECF No. 1) ¶¶ 11, 13.) O'Neal Junior resides with his mother in Keyport, New Jersey, but was staying with his father for several days at the time of the incident and sleeping on the couch. (*Id.* ¶ 12.) On June 17, 2016, O'Neal Senior was at his residence with O'Neal Junior when Detective Fulham executed a search warrant of the residence because he "received intelligence that Adam O'Neal was involved in the sale of marijuana." (*Id.* ¶¶ 10, 14.) At the time of the search warrant's execution, Adam was not at the residence. (*Id.* ¶ 17.) Instead, he was working at All Phase Heating and Air Conditions, two minutes walking distance from the residence. (*Id.*)

At the time of the search warrant's execution, O'Neal Junior "heard a battering ram being used to break down the front door of the house," so he opened the door, and "police officers forcibly entered the house." (*Id.* ¶ 18.) Upon entry, unidentified officers "grabbed" O'Neal Senior, "threw him to the ground," and "forcibly handcuffed him." (*Id.* ¶ 19.) O'Neal Junior was also "handcuffed and pulled outside." (*Id.* ¶ 21.) As a result of the search warrant, CDS, paraphernalia and monetary evidence was found in Adam's locked bedroom. (*Id.* ¶ 22.) Once Plaintiffs were

removed from the house, a Middletown Township Officer allegedly stated to O'Neal Senior, "If Adam does the right thing, you won't be arrested." (*Id.* ¶ 23.) In the interim, Detective Fulham charged both Plaintiffs with

> First Degree Maintaining or Operating a Controlled Dangerous Substance Production Facility, in violation of N.J.S.A. 2C:35-44; Second Degree Conspiracy to Maintain a Manufacturing Facility, in violation of N.J.S.A. 2C:5-2A(1); Third Degree Possession of a Controlled Dangerous Substance (Psilocybin), in violation of N.J.S.A. 2C:35-10A(1); Third Degree Possession of CDS (Cocaine), in violation of N.J.S.A. 2C:35-10A(1); Third Degree Possession of CDS (Heroin), in violation of N.J.S.A. 2C:35-10A(1); Third Degree Possession of CDS (Ecstasy/MDMA), in violation of N.J.S.A. 2C:35-10A(1); Fourth Degree Possession of CDS (Hashish), in violation of N.J.S.A. 2C:35-10A(3); Fourth Degree Possession of CDS (Marijuana), in violation of N.J.S.A. 2C:35-10A(3); Third Degree Possession with Intent to Distribute CDS (Cocaine), in violation of N.J.S.A. 2C:35-5B(3); Third Degree Possession with Intent to Distribute CDS (Psilocybin), in violation of N.J.S.A. 2C:35-5B(3); Third Degree Possession with Intent to Distribute CDS (Ecstasy/MDMA), in violation of N.J.S.A. 2C:35-5B(3); Third Degree Possession with Intent to Distribute CDS (Hashish), in violation of N.J.S.A. 2C:35-5B(11); and Third Degree Possession with Intent to Distribute CDS (Marijuana), in violation of N.J.S.A. 2C:35-5B(3).

(*Id.* ¶ 24.) Consequently, Plaintiffs were arrested and incarcerated. (*Id.* ¶ 26.) Subsequent to the search but prior to Plaintiffs being transported to police headquarters, Detective Fulham allegedly stated, "'Adam is in a lot of trouble. He's like Scarface.'" (*Id.* ¶ 27.)

Adam was arrested on June 17, 2016. (*Id.* ¶ 30.) At the time of his arrest, he allegedly informed Detective Fulham "that all CDS, paraphernalia, and contraband recovered by way of the Search Warrant's execution was his and it did not belong to either Plaintiffs." (*Id.*) He further noted Plaintiffs were not involved with the drugs found in his bedroom. (*Id.*) Despite his admission, Detective Fulham allegedly "allowed Plaintiffs to remain incarcerated." (*Id.* ¶ 31.)

3

O'Neal Senior remained incarcerated for thirty-six days and O'Neal Junior for fifty days. (*Id.*) On April 11, 2017, the charges filed against Plaintiffs were dismissed. (*Id.* ¶ 32.)

Plaintiffs filed a Complaint against Middletown Township, Middletown Township Police Department, Detective Fulham, Police Chief Weber, and several John Does alleging: (1) Detective Fulham violated 42 U.S.C. § 1983 because he falsely arrested and falsely imprisoned Plaintiffs (Count I); (2) Detective Fulham violated 42 U.S.C. § 1983 because he maliciously prosecuted Plaintiffs (Count II); (3) John Does violated 42 U.S.C. § 1983 because they used excessive force when arresting O'Neal Senior (Count III); (4) Middletown Township violated 42 U.S.C. § 1983 because it failed to train, supervise and discipline police officers, and to institute policies, practices and customs, to ensure police officers made lawful arrests and did not use excessive force (Count IV); (5) Police Chief Weber and John Does violated 42 U.S.C. § 1983 because they failed to train, supervise and discipline police officers, and to institute policies, practices and customs, to ensure police officers made lawful arrests and did not use excessive force (Count V); and (6) violations of the New Jersey State Constitution and/or New Jersey Civil Rights Act ("NJCRA") against all Defendants analogous to its federal counterparts above. (*See* ECF No. 1.)

On May 14, 2018, Defendants filed a Partial Motion to Dismiss Plaintiffs' Complaint. (ECF No. 8.) Specifically, they seek to dismiss: (1) Plaintiffs' claim against Middletown Township Police Department because they are not a proper party to be sued; (2) Plaintiffs' claim against Middletown Township because they failed to state a valid *Monell* claim; (3) Plaintiffs' failure to train claims against Middletown Township and Police Chief Weber because they fail to state a claim; (4) Plaintiffs' claims against Detective Fulham and Police Chief Weber in their official capacities because they duplicate the claims against Middletown Township; (5) Plaintiffs' claim against Police Chief Weber for supervisory liability because it fails to state a valid claim; and (6)

4

Plaintiffs' state law claims because they are analogous to their federal counterparts. (*See* ECF No. 8-2.) Plaintiffs oppose the Motion. (ECF No. 12.)

**II. LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## III. DECISION

### A. Claims Against Middletown Township Police Department

Defendants argue claims against Middletown Township Police Department should be dismissed because Middletown Township Police Department is not a proper party to be sued in this matter. (ECF No. 8-2 at 5.) Specifically, they argue "[i]n a § 1983 action against a municipality and a police department, the police department should be dismissed as 'it is to the municipality that any liability must flow.'" (*Id.* at 5 (quoting *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 590 (D.N.J. 2013).)

Plaintiffs fail to present any substantive argument in opposition to Defendants' argument, and therefore, have conceded the point. *13 Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver of the same); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Pers. v. Teamsters Local Union 863*, No. 12–2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Accordingly, Defendants' Motion to Dismiss claims against Middletown Township Police Department is **GRANTED**.

**B. Claims Against Detective Fulham and Police Chief Weber in Their Official Capacity**

Defendants argue claims against Detective Fulham and Police Chief Weber in their official capacity should be dismissed because "these 'official capacity' claims duplicate Plaintiffs' claim against [Middletown Township]". (ECF No. 8-2 at 17.) Specifically, they argue "'where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant.'" (*Id.* (quoting *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2013).)

Plaintiffs fail to present any substantive argument in opposition to this argument, and therefore, also conceded this point. *13 Hollister*, 142 F. App'x at 577 (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver of the same); *Ankele*, 286 F. Supp. 2d at 496 ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Pers.*, 2013 WL 5676802, at *2 ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Accordingly, Defendants' Motion to Dismiss claims against Detective Fulham and Police Chief Weber in their official capacities is **GRANTED**.

## C. *Monell* and Failure to Train Claims Against Middletown Township

Defendants argue Plaintiffs' *Monell* claim is not sufficiently plead because it is completely conclusory and devoid of any facts to support it. (ECF No. 8-2 at 7-10.)[2] Plaintiffs "submit that [their] factual allegations adequately support their claim for municipal liability against [] Middletown Township." (ECF No. 12 at 3-4.)

Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"To establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." *Shuman ex rel Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995) (citing *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir. 1993))); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has

---

[2] Count IV of Plaintiffs' Complaint alleges Middletown Township contained unlawful policies or customs and failed to train, supervise and discipline its officers. (ECF No. 1 ¶¶ 43-49.) Defendants' Motion to Dismiss separates Plaintiffs' *Monell* claim and failure to train claim. (*See* ECF No. 8-2 at 6, 11.) Plaintiffs' opposition, however, combines both. As such, the Court will not segregate Count IV into two separate claims and address them both in this section as well.

deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under section 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

9

A policy or custom can be established in two ways. "Policy is made when a decision [] maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Benjamin*, 937 F. Supp. 2d at 595 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted)). "A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480 (citation omitted)). Custom can also be established through evidence of "knowledge and acquiescence." *Id.*

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under § 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate

that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A patter of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Here, Plaintiffs fail to allege the existence of any preexisting policy, custom, or practice, that could form the basis of a municipal liability claim. The Complaint only states, "Middletown Township, was on actual and/or constructive notice that its police officers were engaged in the practice or custom of making false arrests and using excessive force on citizens," "knowingly and recklessly failed to . . . to institute policies and/or practices to prevent, penalize and cure such abuses," and that "[t]his pattern, practice and/or policy of failing to train reflect deliberate indifference to the rights of person such as Plaintiffs." (ECF No. 1 ¶¶ 45-47.) Plaintiffs' add that "[t]he injuries suffered . . . are the proximate result of [Middletown Township's] deliberate indifference to properly train." (*Id.* ¶ 48.) Plaintiffs' allegations are completely conclusory and, at

best, merely recite the elements necessary to establish a *Monell* claim. The Complaint is devoid of any facts demonstrating a policy or facts supporting that false arrests or excessive force in Middletown Township were so pervasive and well settled as to constitute a custom under *Monell*.

Plaintiffs similarly fail to allege any facts to support a finding that Middletown Township failed to train, supervise, penalize, or correct any officer's behavior. Again, the allegations above reflect nothing more than a conclusory recitation of the elements of a failure to train claim. There are no facts supporting the failure to provide any specific training or a deliberate indifference to the rights of Plaintiffs or anyone. Accordingly, Defendants' Motion to Dismiss Count IV is **GRANTED**.

**D. Failure to Train and Supervisory Liability Claims Against Police Chief Weber**

Defendants argue Plaintiffs' failure to train claim against Police Chief Weber should be dismissed because they "are bare legal conclusions or naked assertions unsupported by any facts." (ECF No. 8-2 at 14-15.) Plaintiffs do not directly oppose this argument. Instead, they only address the supervisory liability claim against Police Chief Weber. (*See* ECF No. 12.) Their failure to address this argument, alone, demonstrates they conceded this point. *Pers.*, 2013 WL 5676802, at *2 ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Nevertheless, the Court finds the Complaint is devoid of any facts to support a failure to train claim against Police Chief Weber.

The Complaint pleads conclusory allegations against Police Chief Weber stating he "fail[ed] to train, supervise and discipline police officers who ma[de] false arrests and use[d] excessive force [which] amount[ed] to a pattern, practice and/or policy of lax or no supervision of police officers when they engage[d] in conduct that violate[d] the connotational rights of citizens." (ECF No. 1 ¶ 52.) Plaintiffs further alleged, without any factual support, that "[t]his pattern,

practice and/or policy of failing to train, supervise and discipline reflect[ed] deliberate indifference to the rights of persons such as Plaintiffs." (*Id.* ¶ 53.) Plaintiffs also allege, again without factual support, Police Chief Weber "had prior notice of similar incidents and violations of the constitutional rights of citizens but [] failed to take appropriate corrective action." (*Id.* ¶ 56.) These allegations are nothing but bare conclusory allegations. There are no facts supporting Police Chief Weber's alleged failure to provide any specific training or a deliberate indifference to the rights of Plaintiffs or anyone. Accordingly, Defendants' Motion to Dismiss the failure to train claim against Police Chief Weber is **GRANTED**.

Defendants also argue Plaintiffs' supervisory liability claim against Police Chief Weber should be dismissed because they cannot state a claim. (ECF No. 8-2 at 19.) Plaintiffs contend the allegations in their Complaint are sufficient because they plead Police Chief Weber had a duty to train, supervise and discipline Middletown Township officers to ensure that they make lawful arrests and do not use excessive force. (ECF No. 12 at 5-6.)

It is well established that a "plaintiff cannot rely solely on a respondeat superior theory of liability against a defendant for Section 1983 liability." *Ruiz v. N.J. Dep't of Corr.*, No. 15-3304, 2016 WL 3450813, at *3 (D.N.J. June 21, 2016). "Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs." *Id.* (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

The Third Circuit has stated,

> "[T]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they

> "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates" violations.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

To state a claim for supervisory liability under the first theory, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citation omitted). The Third Circuit has emphasized that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Id.* (citation omitted.) Instead, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.* (citation omitted).

Much like the deficiencies in the above claims, Plaintiffs do not plead sufficient facts to state a claim for supervisory liability that is plausible on its face. The allegations supporting Plaintiffs' supervisory liability claim are the same allegations used to support their failure to train claim mentioned above. Plaintiffs, at best, merely recite the elements of a supervisory liability claim. Plaintiffs offer no facts to support either theory of supervisory liability. They proffer no facts of any specific supervisory practice or procedure that Police Chief Weber failed to employ or any existing custom or practice. They also fail to state that Police Chief Weber failed to discipline officers who engaged in unconstitutional acts or facts supporting their allegation of prior

incidents. There is nothing in the Complaint to support that Police Chief Weber was aware of and indifferent to the risk of the injury that occurred. Accordingly, Defendants' Motion to Dismiss Plaintiffs' supervisory liability claim against Police Chief Weber is **GRANTED**.

### E. NJCRA Claims

Defendants argue Plaintiffs cannot state a claim under the NJCRA for the same reasons they cannot state a claim under § 1983, since "such claims are interpreted analogously to § 1983." (ECF No. 8-2 at 22.) Plaintiffs concede that the NJCRA is modeled after its federal counterpart but argue their state claims should not be dismissed for the reasons articulated above. (ECF No. 12 at 6.)

The NJCRA provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6–2(c). The NJCRA was modeled after § 1983, and "courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of § 1983,'" thereby construing the NJCRA in terms similar to its federal counterpart. *Samoles v. Lacey Twp.*, No. 12–3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citation omitted); *see Hartfelder v. N.J. State Police*, No. 165461, 2017 WL 3184173, at *5 (D.N.J. July 26, 2017); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). This Court has repeatedly interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983."); *Armstrong*, 2010 WL 2483911 at *5 ("[T]he [NJRCA] is a

15

kind of analog to section 1983."). The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally contemporaneous with and subject to the same defenses and immunities as those brought under § 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). "Therefore, the Court will analyze Plaintiffs' NJCRA claims through the same lens of § 1983." *Id.* at 444.

The NJCRA, like § 1983, does not impose vicarious or *respondeat superior* liability. *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *8 (D.N.J. July 15, 2015) ("[B]ecause *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA.") (quoting *Ingram v. Twp. Of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012)); *Estate of Dasaro v. Cty. of Monmouth*, No. 14-7773, 2015 WL 5771606, at *5 n.3 (D.N.J. Sept. 30, 2015) (same); *see Hudgon v. LaFleur*, No. 07-3626, 2010 WL 2950004, at *7 n.6 (D.N.J. July 22, 2010) ("[T]he Court sees no reason not to interpret the NJCRA consistent with *Monell* as precluding municipal liability absent an official pattern or practice.").

Count VI of Plaintiffs' Complaint does not present any independent factual basis for their NJCRA causes of action. Rather, it recites the same conclusory allegations as its federal counterparts. For the reasons set forth in connection with the § 1983 analysis above, Plaintiffs cannot state a claim under the NJCRA. Accordingly, Defendants' Motion to Dismiss Plaintiffs' NJCRA claims that coincide with the § 1983 claims dismissed in this opinion is **GRANTED**.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' may file an Amended Complaint by no later than January 14, 2019. An appropriate Order will follow.

Date: January 2, 2019 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**